# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DLD CONSTRUCTION FRAMING,
INC., *et al.*,

        Plaintiffs,

-v-                                         Case No.:  2:12-cv-0535
                                         JUDGE SMITH
                                         Magistrate Judge Kemp

ECCC ALABAMA, LLC,

        Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant ECCC Alabama, LLC's Motion for Summary Judgment (Doc. 19).  The Motion has been fully briefed and is ripe for review.  For the reasons that follow, the Court **GRANTS in part** Defendant's Motion for Summary Judgment.

## I.      BACKGROUND

Plaintiff DLD Construction Framing, Inc. ("DLD Framing") is a Georgia corporation with its headquarters and principal place of business in Gwinnett County, Georgia.  Plaintiff Fortuna Framing, Inc. ("Fortuna Framing") is a North Carolina corporation with its headquarters and principal place of business in Wilmington, North Carolina.  Plaintiff Kancor Companies, LLC ("Kancor") is a Florida limited liability company with its headquarters and principal place of business in Orlando, Florida.[1]  Plaintiffs are construction subcontractors providing rough carpentry and framing services on large-scale commercial construction projects.

---

[1] Prior to Defendant filing its Motion for Summary Judgment, Plaintiff Kancor and Defendant resolved all the claims between them and filed a stipulation of dismissal.  (*See* Doc. 16).

Defendant ECCC Alabama, LLC ("ECCC") is an Ohio limited liability company with its headquarters and principal place of business in Columbus, Ohio.  ECCC was formed for the purpose of serving as the general contractor on a student housing project located at the University of Alabama, known as the Province at Tuscaloosa ("the Project").  ECCC, as the general contractor for the Project, contracted with a number of trade contractors, including framers, to construct the Project.  ECCC contracted with DLD Framing to do the framing for the Project.  DLD Framing was originally unlicensed, but as a requirement to being awarded the framing contract for the Project, it was required by ECCC to become licensed.  DLD Framing became licensed as of January 4, 2012.

ECCC and DLD Framing entered into an agreement, whereby DLD Framing would provide the rough carpentry and framing services on the Project.  (Agreement attached as Ex. 1 to the declaration of ECCC's president Mike Cannon ("Agreement")).  The Agreement specifically required DLD Framing to disclose to ECCC the identity of their subcontractors and required all subcontractors to be properly licensed.

> 4.2.1 The Subcontractor shall give notices and comply with laws, ordinances, rules, regulations, and orders of public authorities bearing on performance of the Work of this Subcontract. The subcontractor shall secure and pay for governmental fees, licenses and inspections, if applicable, necessary for proper execution and completion of the Subcontractor's Work....

(Agreement at 5).  Additionally, the Agreement provides:

> GENERAL REQUIREMENTS: Submitting a list of suppliers and lower tier subcontractors that will be utilized on this project and securing written approval by the Prime Contractor prior to commencing work.

(*Id*. at 16).

DLD Framing began work on the Project on January 12, 2012.  Soon after, DLD

-2-

contracted with Fortuna Framing to provide additional work on the rough carpentry and framing work.  Fortuna Framing, however, was not licensed in the State of Alabama, despite being required to be licensed by the Alabama Licensing Board for General Contractors ("Alabama Licensing Board").[2]

Pursuant to Article 4 of the Agreement, DLD submitted draw requests for work which it had completed under the Contract.  Pursuant to Article 11, ECCC would make periodic progress payments to DLD Framing upon receipt of complete and accurate applications for payment.  The periodic progress payments would be 90% of the scheduled values, with the remaining 10% of the scheduled values to be paid upon completion of the Project.

Sometime in February 2012, Defendant ECCC ceased making periodic progress payments to DLD Framing.  Defendant ECCC contends that upon learning about Fortuna's unlicensed status, it removed DLD Framing and Fortuna Framing from the Project at the end of February 2012.  (Cannon Dec. at ¶ 9).  Additionally, Defendant contends that the quality of the framing done by DLD and Fortuna was extremely poor.  (*Id*. at ¶ 11).

DLD and Fortuna, however, contend that they provided competent work on the Project, which ECCC accepted.  "Although there were various 'punch list' type items which had to be corrected or performed, there were no significant defects with the work."  (Pls.' Response at 3, citing Diaz Aff. ¶ 9 and Fortuna Aff. ¶ 9).  DLD Framing further contends that after Defendant stopped making timely progress payments, it quit the Project.  (Diaz Aff. ¶ 18).  At the time it quit the Project, the work was more than forty-five percent complete.  (Diaz Aff. ¶ 19).

---

[2]  The certified records of the Licensing Board establish that Fortuna did not become licensed until March 15, 2012.

After DLD Framing left the Project, ECCC prepared a new Agreement with Fortuna Framing; however, the Agreement was never signed.[3] The parties discussed that Fortuna Framing was not licensed in Alabama and that it had been working under DLD's license. ECCC told Fortuna to get its own license, which it did. Fortuna Framing continued to work on the Project, but quit when ECCC stated that it would not pay Fortuna for the work it had completed on the Project.

Sometime after, Kancor Corporation was brought in to continue the framing project. ECCC describes that Kancor had to "redo the shoddy work" of DLD and Fortuna. (Def.'s Mot. at 4, citing Cannon Dec. at ¶ 11). ECCC's President, Mike Cannon, a thirty year veteran of the construction industry, stated that it was one of the worst framing jobs he had ever seen. (Cannon Dec. at ¶ 12). DLD and/or Fortuna failed to follow blue prints, installed roof trusses in the wrong location, failed to install walls square and plumb, and simply performed their job well below industry standards. (*Id*.). Defendant contends that it paid the framing contractors approximately $1.4 million even though the entirety of the framing budget was several hundred thousand dollars less. Further, ECCC missed its deadline for completion of the Project.

Plaintiffs DLD Framing, Fortuna Framing, and Kancor Companies initiated this case on June 15, 2012, against Defendant ECCC asserting claims for breach of contract with DLD (Count I); breach of contract with Fortuna (Count II); breach of contract with Kancor (Count III); unjust enrichment by DLD (Count IV); unjust enrichment by Fortuna (Count V); and unjust enrichment by Fortuna (Count VI). On December 13, 2012, Plaintiff Kancor voluntarily

---

[3] It is unclear from the briefing why this Agreement was never signed. In fact, Defendant ECCC does not even acknowledge this Agreement.

dismissed all its claims against Defendant. (Doc. 16). Accordingly, Counts III and VI were dismissed. Defendant has now moved for summary judgment on the remaining claims against it (Counts I, II, IV, and V).

## II.    STANDARD OF REVIEW

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587. The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53. Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine

issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**III.    DISCUSSION**

Plaintiffs DLD Framing and Fortuna Framing each bring claims for breach of contract and unjust enrichment against Defendant ECCC.  As a preliminary matter, Defendant argues that Plaintiffs' affidavits in support of its Response in Opposition to Defendant's Motion for Summary Judgment should be stricken because they were not attached to Plaintiffs' brief and were filed one day after the filing deadline.  Defendant references Local Rule 7.2(e) which provides in pertinent part:

> (e)  Attachments to Memoranda.  Evidence ordinarily shall be presented, in support of or in opposition to any Motion, using affidavits, declarations pursuant to 28 U.S.C. § 1746, deposition excerpts, admissions, verified interrogatory answers, and other documentary exhibits.  Unless already of record, such evidence shall be attached to the memorandum or included in an appendix thereto, and shall be submitted within the time limit set forth above.

Defendant is correct that Plaintiffs' affidavits in support of their Response were not attached to their memorandum as required by the rule and further were not submitted within the filing deadline.  Rule 6 of the Federal Rules of Civil Procedure has been interpreted in a similar manner to Local Rule 7.2(e).  Rule 6(c)(2) provides that "[a]ny affidavit supporting a motion must be served with the motion."  The purpose of the Rule 6 requirement is to prevent the moving party from springing new facts on the nonmoving party when it is too late to contest them.  *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002).

The purpose behind Rule 6, and presumably Local Rule 7.2(e) as well, is not implicated in this case.  Defendant has not in any way been prevented from addressing the evidence presented in the affidavits because they were only filed one day late and two days after Plaintiffs filed their Response.  Accordingly, Defendant's Motion to Strike is **DENIED**.  The Court will now turn to the merits of this case.

A.    **Breach of Contract with DLD Framing**[4]

Defendant ECCC argues that it is entitled to summary judgment on Plaintiff DLD's

breach of contract claim because DLD was a party to an illegal contract with Fortuna.

Defendant asserts that Alabama law is clear that a party cannot maintain a cause of action if he

must "rely in whole or in part on an illegal or immoral act or transaction to which he is a party."

*Hinkle v. Ry. Express Agency*, 242 Ala. 374, 378 (1942); *see also White-Spunner Constr., Inc. v.*

*Constr. Completion Co., LLC*, 103 So. 3d 781, 2012 Ala. LEXIS 80 (Ala. 2012).

Plaintiff DLD, however, argues that its claim is not premised solely upon work

performed by Fortuna.  DLD asserts that it has its own claim based on the work of DLD

employees and its other, properly licensed, subcontractors.  Plaintiff references the *White-*

*Spunner* case cited by Defendant and argues that nothing in that case "purports to deprive a

contracting party of the benefits of its own work for which it was properly licensed or the work

of its other, properly licensed contractors."  (Pls.' Response at 6).  Defendant concedes that the

most DLD can claim is "the difference between its own pay applications ($261,799.46) and the

amount it has already been paid ($252,477.47), which equals $9,321.99."  (Def.'s Mot. at 10, fn

7).  Plaintiff DLD references the aforementioned concession by ECCC, but fails to assert

whether it is in agreement as to the amounts due.

There is no dispute that Alabama law must be applied to this contract dispute.[5]  Under

Alabama law, any person or corporation engaged in the business of general contracting in the

---

[4] Plaintiffs concede that a grant of summary judgment as to Count II of Plaintiffs' Amended
Complaint, breach of contract with Fortuna, is proper.

[5] The Agreement between DLD Framing and ECCC applies Alabama law and all the work that is the
subject of this case took place in Alabama.

state much be licensed. *See* Ala. Code 1975 § 34-8-6. A "general contractor" is "one who, for a fixed price, commission, fee, or wage undertakes to construct or superintend or engage in the construction, of any building, . . . structure, . . . or any improvement in the State of Alabama where the cost of the undertaking is fifty-thousand dollars. . . or more. . . ." Ala. Code 1975 § 34-8-1(a). A subcontractor is subject to the same licensing requirements as a general contractor where the subcontractor undertakes the activities ascribed to general contractors pursuant to a contract with the general contractor. *See* Ala. Code 1975 § 34-8-1(c).

The facts of *White-Spunner* are very similar to the case at bar. White-Spunner was a licensed general contractor who entered into contracts to build dormitory buildings at Auburn University. White-Spunner then subcontracted with CCC, who was licensed, to do the framing work. Subsequently, CCC subcontracted with Buena Vista. The workers provided by Buena Vista wore CCC uniforms and were under the control of CCC. However, Buena Vista was not licensed as a contractor in Alabama. A dispute arose between White-Spunner and CCC, and ultimately White-Spunner stopped paying CCC's invoices. The trial court ruled in favor of CCC, ordering White-Spunner to pay the amount due under the contract.

On appeal, White-Spunner argued that the trial court erred in entering a summary judgment in favor of CCC because CCC is effectively suing them to recover money it claims it was owed as a result of work it hired Buena Vista to complete. White-Spunner further argued,

> because Buena Vista was an unlicensed contractor, its contract with CCC was illegal and void, and CCC accordingly cannot prevail on its claims. *See, e.g., Ex parte W.D.J.*, 785 So. 2d 390, 393 (Ala. 2000) ("Moreover, this Court has held that '[a] person cannot maintain a cause of action if, in order to establish it, he must rely in whole or in part on an illegal or immoral act or transaction to which he is a party.' *Hinkle v. Railway Express Agency*, 242 Ala. 374, 378, 6 So. 2d 417, 421 (1942). In *Oden v. Pepsi Cola Bottling Co.*, 621 So. 2d 953 (Ala. 1993), this Court stated that the purpose of the Hinkle rule is to ensure that "'those who

> transgress the moral or criminal code shall not receive aid from the judicial
> branch of government.'" 621 So. 2d at 955(emphasis omitted)).  CCC disputes
> that its contract with Buena Vista was illegal; however, it argues that
> White-Spunner and Hartford have no standing to challenge the status of that
> contract regardless of the ultimate determination of its legality.

*White-Spunner*, 103 So. 3d at 787.

In considering whether CCC's contract with Buena Vista was illegal, as argued by

White-Spunner, the court inquired into whether Buena Vista's agreement with CCC required it

to engage in activities that required a license under§ 34-8-1 *et seq.*  Despite CCC's arguments

that Buena Vista employees "effectively became CCC employees and employees of a licensed

contractor are not required to be licensed themselves," the Court held that "Buena Vista was

engaged in general contracting and violated Alabama law by failing to obtain the necessary

license.  Accordingly, CCC's agreement with Buena Vista was illegal."  *Id.* at 791, 794.  Further,

based on the *Hinkle* rule described *supra*, the Court held that "[a] person cannot maintain a cause

of action if, in order to establish it, he must rely in whole or in part on an illegal or immoral act

or transaction to which he is a party."  *Hinkle*, 242 Ala. at 378.

Finally, the *White-Spunner* court concluded that:

> CCC's claims against White Spunner and Hartford are dependant upon its
> contract with Buena Vista because it cannot establish a right to the money it
> claims without proving that it performed the work required; however, that same
> evidence establishing that the work was performed -- sign-in sheets, invoices, etc.
> -- also establishes that the work was performed by Buena Vista workers pursuant
> to the illegal contract between CCC and Buena Vista.  The courts will not be used
> to assist "those who transgress the moral or criminal code," and the summary
> judgment entered in favor of CCC must accordingly be reversed.

*Id.* at 794.

There is no question in the case at bar that Fortuna Framing contracted with DLD

-10-

Framing to provide assistance with the framing of the Project.[6]  Accordingly, under the reasoning supplied by the *White-Spunner* court, because Fortuna was engaged in general contracting and violated Alabama law by failing to obtain the necessary license, DLD's contract with Fortuna was illegal.  It follows, based on *Hinkle*, that DLD cannot maintain a cause of action if, in order to establish it, it must rely in whole or in part on an illegal contract.  Defendant argues, and the Court agrees, that "DLD's claim against ECCC, almost exclusively, depends upon its contract with Fortuna."  (Def.'s Mot. at 10).  The evidence submitted by DLD to show it performed the work on the Project specifically includes invoices from Fortuna.  (Cannon Decl. at ¶¶ 6-7 and Ex. 2).

Plaintiffs, however, argue that DLD should still be able to recover the portion of its claim which was dependent solely on the work performed by its own employees and other licensed subcontractors.  Plaintiffs argue, and the Court agrees, that the *White-Spunner* case did not present this scenario, or the Court simply did not acknowledge it.  However, in *ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 2013 U.S. Dist. LEXIS 28034 (S.D. Ala. 2013) ("TKS"), the court addressed this issue: "whether, under Alabama law, work performed by an unlicensed subcontractor that is but part of the overall work performed by a general contractor nullifies the entirety of the general contractor's work for an owner.  Put differently, pursuant to Ala. Code § 34-8-1, *et seq.*, and cases interpreting it, does the unenforceability of an illegal contract made with an unlicensed subcontractor taint the entirety of a general contractor's

---

[6] Neither party has attached the contract between DLD Framing and Fortuna Framing, however, the affidavits submitted by Plaintiffs stated that the parties contracted to do the framing.  There is no dispute between the parties that Fortuna was contracted to perform framing, which constitutes construction activity according to the Alabama Licensing Board for General Contractors.  Therefore, based on Plaintiffs' own claims, Fortuna was a general contractor according to § 34-8-1 *et seq.*

agreement with an owner, making the general contractor's agreement with the owner illegal and also unenforceable?" *Id.* at *13-14.

The Alabama District Court, applying Alabama law, held that the original agreement between the general contractor and subcontractor was not unenforceable based on that subcontractor's separate unenforceable agreement with an unlicensed subcontractor.  The TKS court held that:

> While it is "clear and certain" that contracts with unlicensed contractors are unenforceable in Alabama because such contracts contravene public policy, it is far from "clear and certain" that some work performed by an unlicensed subcontractor for a licensed general contractor taints the general contractor's entire agreement with an owner, nullifying that agreement as against public policy and, thus, allowing an owner "to escape from [its] obligations on the pretext of public policy[.]" *Milton Constr.*, 568 So. 2d at 788.  Thus, TKS is not entitled to judgment as a matter of law on any illegality theory that conflates the *Hinkle* Rule and the AGCPA's prohibition against enforcing contracts with unlicensed contractors (such as the agreement between Liberty and UFI) to invalidate the entire HSM agreement, between UFI and TKS, extending the holding of *White-Spunner,* because such an amalgamated approach disregards this Court's duty to merely ascertain and apply Alabama law to reach the same result an Alabama court would reach.

*Id.* at *28-29.  The TKS court did, however, grant partial summary judgment to the general contractor based on the illegality theory as discussed in detail in *White-Spunner*, awarding the amounts claimed that were "dependent upon" or "stem from" work performed for UFI by Liberty16—which UFI admits was unlicensed.  *Id.*

Therefore, based on the aforementioned analysis, DLD can pursue its claims for any unpaid invoices for work that it performed directly, or through its properly licensed subcontractors.  However, ECCC is entitled to an offset of the amount it has already paid Plaintiffs.  According to ECCC, it has already paid Plaintiff DLD $252,477.47 pursuant to their agreement.

-12-

Therefore, the Court finds that ECCC is entitled to partial summary judgment on DLD's claim for breach of contract based on DLD's illegal contract with Fortuna.  DLD is entitled to recover on any unpaid invoices for work performed exclusively by its own employees or those of licensed subcontractors.  DLD, however, has failed to submit any evidence in support of this argument.[7]  The Court will therefore ask for briefing on the issue of damages and will consider Defendant's offset argument at that time.  Therefore, DLD shall submit specific invoices in accordance with this Court's findings.  ECCC can then respond and raise any offset argument.  The briefing schedule will be set forth at the conclusion of this Opinion and Order.  If Plaintiff DLD fails to present any admissible evidence of damages on its partial breach of contract claim, then summary judgment will be entered in favor of Defendant ECCC.

### B.      Unjust Enrichment / Quantum Meruit Claims by DLD and Fortuna

Defendant moves for summary judgment on Plaintiffs DLD and Fortuna's claims of unjust enrichment.  Defendant argues that Plaintiffs cannot circumvent the illegal contracts by asserting equitable claims for relief.  Defendant asserts that no principle of equity is available to circumvent the illegality of Plaintiffs' conduct and accordingly Plaintiffs' claims must fail.

Despite asserting claims of unjust enrichment in their Amended Complaint, Plaintiffs now assert that they are permitted to recover under the theory of quantum meruit.  Defendant argues that Plaintiffs cannot assert a claim for quantum meruit because they did not raise that claim in their Amended Complaint.  The Court agrees that generally, "a plaintiff cannot assert new causes of actions or claims in response to a motion for summary judgment which are not

---

[7] DLD Framing alleges in its Amended Complaint that it submitted applications for payment totaling $436,783.83, but were only paid a total of $274,683.99 under the DLD Contract.  However, it is not clear from these applications who completed the work.

contained in his pleadings." *Cochran v. JP Morgan Chase, N.A.*, 2012 U.S. Dist. LEXIS 153638, *10 (M.D. Tenn. 2012).  However, Rule 8 of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain: . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief;. . ."  Plaintiffs generally allege that Defendant ECCC has been unjustly enriched by the value of the rough carpentry and framing services provided by DLD Framing and Fortuna Framing.  Based on the allegations in Plaintiffs' Amended Complaint, it could be construed that they were bringing a claim of implied contract or quantum meruit.

Defendant argues that Alabama law also bars parties to an illegal contract from enforcing the terms of the illegal contract in equity.  *See Southern Metal Treating Co., Inc. v. Goodner*, 271 Ala. 510, 517 (1960) ("[R]ecovery for services on any theory of implied contract is equally barred, for such recovery would be no less violative of the public policy. . .."); *see also Cooper v. Johnston*, 283 Ala. 565, 569 (1969) ("The transactions were illegal violative of public policy. . .[v]itality cannot be injected into an illegal transaction by way of estoppel.").

Because Plaintiff DLD Framing will have the opportunity to present its damages for its breach of contract claim, it cannot also recover under an equitable claim.  Accordingly, Defendant ECCC is entitled to summary judgment on Plaintiff DLD Framing's unjust enrichment or quantum meruit claim.

Plaintiff Fortuna is barred from bringing a breach of contract claim, so it is seeking equitable relief under an unjust enrichment or quantum meriut theory.  Specifically, Plaintiff Fortuna asserts that it did not obtain a license based on the erroneous advice of ECCC and "ECCC should not be permitted to take advantage of the fact that it misled Fortuna (whether

-14-

negligently or intentionally) in order to avoid payment."  (Pls.' Response at 7).  Alternatively, Plaintiff Fortuna argues that even if they cannot recover for the work performed, it should be permitted to recover in quantum meruit for the materials and equipment it supplied to the Project.

Alabama law is clear that where a party's breach of contract claim is barred as illegal or in violation of public policy, any claims in equity based on that contract are also barred.  *Cooper*, 283 Ala. at 568-69; *see also Southern Metal Treating Co.*, 271 Ala. at 517 (holding that an unlicensed engineer barred from recovering pursuant to its contract had no claim in equity because "recovery for services on any theory of implied contract is equally barred, for such recovery would be no less violative of the public policy expressed in the engineer registration statute").

In *Cooper*, the unlicensed contractor claimed that equity demanded that it be compensated for the benefits conferred on the defendant.  The court rejected this argument:

> Appellee further contends that appellants are estopped from asserting the invalidity of the contract because they received the benefits of the transaction. This contention is without merit.  The transactions were illegal and violative of public policy.  Vitality cannot be injected into an illegal transaction by way of estoppel.

*Cooper*, 283 Ala. at 569.

The same principle applies to the case at bar.  Plaintiff Fortuna's unjust enrichment or quantum meruit claims are also barred as illegal or violative of public policy just as its' breach of contract claim was.

Plaintiff Fortuna also seeks to recover for the materials and equipment it provided to the Project.  Plaintiff asserts that "[o]ne does not have to be a licensed contractor in order to be a

-15-

supplier on a construction project." (Pls.' Response at 8). Fortuna asserts that it provided

"thousands of dollars worth of nails and fasteners, forklift rentals, etc., for the Project." (*Id.*).

      Defendant ECCC, however, argues that Fortuna is barred from recovering anything,

including materials and equipment because it was not licensed. Though it does appear unjust

that ECCC received at least some benefit in the materials and equipment provided by Fortuna,

Alabama case law does not allow for recovery. In *White-Spunner*, the Supreme Court of

Alabama specifically forbid an unlicensed subcontractor from recovering the costs of labor and

materials it provided to the general contractor. The court explained:

> CCC sued White-Spunner and its surety, Hartford, alleging that White-Spunner
> failed to pay it for ***labor and materials*** it provided as a subcontractor to White-
> Spunner on the Auburn project in the fall of 2008. After the trial court entered a
> summary judgment in favor of CCC. . . White-Spunner and Hartford appealed.
> We now reverse that summary judgment based on the fact that CCC's claims
> against White-Spunner and Hartford stem from an illegal contract CCC entered
> into. . ..

*White-Spunner*, *supra*, at *13 (emphasis added). *See also, Southern Metal*, 271 Ala. at 517

(holding that an unlicensed engineer was barred from recovering under quantum meruit for labor

and materials provided because the engineer was not properly licensed in violation of Alabama

law).

      Accordingly, no matter what theory Plaintiff Fortuna asserts, it is barred from recovering

any alleged damages, costs, materials, equipment, etc. because it was not a licensed

subcontractor in accordance with Alabama law.

## IV. CONCLUSION

      Based on the foregoing, the Court **GRANTS in part** Defendant's Motion for Summary

Judgment. Defendant ECCC is entitled to summary judgment on Plaintiff Fortuna's claims of

breach of contract and unjust enrichment/quantum meruit, as well as Plaintiff DLD's unjust enrichment/quantum meruit claim. Defendant ECCC is also entitled to partial summary judgment on Plaintiff DLD's breach of contract claim based on any work performed by Fortuna. Defendant may be entitled to summary judgment on this entire claim after a review of Plaintiff DLD's invoices and applying any offset. In order to make this determination as to whether Plaintiff DLD is due anything on its outstanding invoices, the Court sets the following briefing schedule:

- Plaintiff DLD shall submit its request for damages for work performed solely by its own employees or licensed subcontractors, on or before May 31, 2013.

- Defendant ECCC's Response, including any offset argument, shall be due on or before June 21, 2013.

- Plaintiff's Reply shall be filed on or before July 5, 2013.


The Clerk shall remove Document 19 from the Court's pending motions list.

**IT IS SO ORDERED.**

            _/s/ George C. Smith_____
            **GEORGE C. SMITH, JUDGE**
            **UNITED STATES DISTRICT COURT**